**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **MAURICE S. JOHNSON,**<br><br>**Plaintiff,**<br><br>**vs.**<br><br>**DAVID GOMEZ, GRAVES, STATEVILLE CORRECTIONAL CENTER INTERNAL AFFAIRS COMMITTEE, DEE DEE BROOKHART, C/O JENNINGS, PUCKETT, OCHS, GIVINGS, TYE, PURDUE, LAWRENCE CORRECTIONAL CENTER INTERNAL AFFAIRS COMMITTEE, SHERRY BENTON, TRAVIS BAYLER, ROB JEFFREYS, ANTHONY WILLS, MENARD CORRECTIONAL CENTER INTERNAL AFFAIRS COMMITTEE, RYAN A. KILDUFF, and CHRISTINA ALLSUP,**<br><br>**Defendants.** | ) | **Case No. 22-cv-860-NJR** |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Maurice Johnson, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Menard Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. In the Complaint, Johnson alleges that he was denied protective custody at Stateville, Lawrence, and Menard Correctional Centers. He asserts claims against the defendants under the First, Eighth, and Fourteenth Amendments.

This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

**The Complaint**

In his Complaint, Johnson makes the following allegations: Since July 27, 2020, he has been in "unapproved" protective custody (*Id*. at p. 13). In December 2021, while at Stateville, he was reclassified as eligible for transfer to a medium security prison. On December 21, 2021, he was transferred to Lawrence, but assigned to general population instead of protective custody (*Id*. at p. 14). Lawrence was also a maximum-security facility. Johnson had a pending request for protective custody at Stateville before the internal affairs committee (*Id*.). He was transported with other general population inmates and placed in general population. After informing an officer of his protective custody status, he was removed from the cell and interviewed by Lieutenant Puckett in Lawrence internal affairs (*Id*. at p. 15). He was then placed in segregation because Lawrence did not have a protective custody unit (*Id*.).

On January 6, 2022, Puckett proposed placing Johnson in general population if he signed out of protective custody (*Id*. at p. 15). Puckett indicated this proposal came from Assistant Chief Administrative Officer Jennings. Johnson declined the offer. Puckett

ultimately denied Johnson's request for protective custody, and Brookhart concurred with the denial (*Id*. at p. 22). Sherry Benton approved the denial (*Id*.).

Johnson remained in restricted housing until January 13, 2022. On several occasions, Correctional Officer Greentree and Lieutenants Ochs, Givings, and Tye informed him that he was a guinea pig for Lawrence because they did not deal with protective custody inmates (*Id*. at p. 16). Puckett tried to convince Johnson to withdraw from protective custody on several occasions. On January 13, 2022, he was placed in a new protective custody unit and was moved to six house, c-wing, lower 2 cell (*Id*. at p. 17). He was the only inmate in the unit as it had previously been used for Covid-19 quarantine (*Id*.).

On January 18, 2022, Johnson attended a hearing with Administrative Review Board ("ARB") chairperson Sherry Benton via telephone (*Id*. at p. 17). He explained his need for protective custody, namely, that his former gang put a hit out on him. On January 24, 2022, he was also interviewed by a Lawrence Correctional Center internal affairs officer (*Id*. at p. 18). He also asked if Johnson would sign out of protective custody and promised that he would be reclassified and sent to a medium security prison if he signed out (*Id*. at p. 18). At that time, Johnson had been denied protective custody. Johnson declined the offer. On January 25, 2022, he was reclassified and made ineligible for transfer to a medium security prison.

On January 26, 2022, Johnson transferred to Menard Correctional Center. He was interviewed the next day by Christina Allsup regarding his request for protective custody (*Id*. at p. 19). Allsup became belligerent, and he was escorted out of the office (*Id*. at p. 20).

Allsup yelled at Johnson, loudly naming the name of the gang that had a hit on him (*Id*.). There were several inmate workers present during the incident. He was ultimately moved to restrictive housing until February 8, 2022. On February 10, 2022 he was again interviewed by the internal affairs office about his need for protective custody (*Id*. at p. 21). He also wrote grievances about his protective custody and transfers, which Ryan Kilduff of the ARB denied (*Id*. at p. 22). On March 8, 2022, Menard's internal affairs office denied his request for protective custody, and Anthony Wills and ARB member Travis Baylor concurred (*Id*. at p. 23).

**Discussion**

Simply put, Johnson's Complaint violates Federal Rule of Civil Procedure 8. Rule 8(a) requires a complaint to set forth "a short and plain statement of [Plaintiff's claim(s)] showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8(d) requires "simple, concise, and direct" allegations. Fed. R. Civ. P. 8(d)(1). The purpose of these rules is to "give defendants fair notice of the claims against them and the grounds for supporting the claims." *Stanard v. Nygren*, 658 F.3d 792, 797 (7th Cir. 2011) (citation omitted); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). There is nothing simple and concise about Johnson's Complaint. He sues 18 individuals across three prisons. He labels nine counts in his Complaint, alleging various due process violations, retaliation, and conditions of confinement claims. He sues "internal affairs committees" at each of the prisons but the use of "internal affairs committee" is too generic to survive threshold review because he does not describe the individuals on the committee or even state the number of them.

Further, Johnson's Complaint also violates the rules of joinder under Federal Rules of Civil Procedure 18 through 20. He attempts to sue individuals for various actions related to his requests for protective custody at Stateville, Lawrence, and Menard Correctional Centers. Further, Stateville is not located in this district; the proper venue for those claims would be in the Northern District of Illinois. 28 U.S.C. § 1391(b); 28 U.S.C. § 93(a). Thus, some of his claims would be subject to both severance and transfer to another district.

He also raises several due process claims related to the denial of his request for protective custody. But there are no due process requirements for requests for protective custody. He also argues that he should have been allowed to grieve the decision, in violation of 20 Ill. Admin. Code § 501. Section 501 concerns the procedures for placement in protective custody and provides that reassignment from the general population to protective custody should be accomplished as quickly as possible, following an inmate's request. § 501.320(a). This regulation does not create a protected liberty interest in remaining in protected custody. *See Kellas v. Lane*, 923 F.2d 492 (7th Cir. 1990) (holding that Illinois prison regulations governing protective custody" do not create a due process claim of entitlement on the inmates' behalf"). *Id*. at 495. In this context, the regulation does not give rise to a liberty interest that is enforceable under the Constitution. *Olim v. Wakinekona*, 461 U.S. 238, 249 (1983); *Smith v. Shettle*, 946 F.2d 1250, 1252 (7th Cir. 1991).

Johnson also attempts to sue various individuals who responded to and denied his grievances. Prison officials incur no liability under Section 1983 if they fail or refuse

to investigate a prisoner's complaints or grievances. *Owens v. Evans*, 878 F.3d 559, 563 (7th Cir. 2017).

Accordingly, the Complaint is **DISMISSED without prejudice**. Johnson will have an opportunity to file a First Amended Complaint if he wishes to pursue any of his claims in this action. If he chooses to do so, Johnson must comply with the instructions and deadlines set forth in the below disposition. He is reminded that should he continue to pursue unrelated claims, those claims will be subject to severance into new cases subject to additional filing fees.

**Pending Motions**

As to Johnson's motion for counsel (Doc. 3), he states that he has sent letters to multiple law firms who have not returned his requests. Given the early stage of the litigation, however, it is difficult to accurately evaluate the need for the assistance of counsel. *See Kadamovas v. Stevens*, 706 F.3d 843, 845 (7th Cir. 2013) ("[U]ntil the defendants respond to the complaint, the plaintiff's need for assistance of counsel ... cannot be gauged.").[1] Further, counsel is not needed at this time because the Court finds Johnson capable of drafting a concise Amended Complaint. He notes in his motion that he is a college graduate with post-graduate education and he is not on any medications which would impair his ability to draft an Amended Complaint. Thus, his request for counsel is **DENIED**.

[1] In evaluating the motion for counsel, the Court applies the factors discussed in *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007), and related authority.

## Disposition

For the reasons stated above, Johnson's Complaint is **DISMISSED without prejudice.**

Johnson is **GRANTED** leave to file a "First Amended Complaint" on or before **January 24, 2023**. Should Johnson fail to file his First Amended Complaint within the allotted time or consistent with the instructions set forth in this Order, the entire case shall be dismissed with prejudice for failure to comply with a court order and/or for failure to prosecute his claims. Fed. R. App. P. 41(b). *See generally Ladien v. Astrachan*, 128 F.3d 1051 (7th Cir. 1997); *Johnson v. Kamminga*, 34 F.3d 466 (7th Cir. 1994); 28 U.S.C. §1915(e)(2). The dismissal shall count as one of Johnson's three allotted "strikes" under 28 U.S.C. § 1915(g).

An amended complaint supersedes and replaces the original complaint, rendering the original complaint void. *See Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 n. 1 (7th Cir. 2004). The Court will not accept piecemeal amendments to the original Complaint. Thus, the First Amended Complaint must stand on its own, without reference to any previous pleading, and Johnson must re-file any exhibits he wishes the Court to consider along with the First Amended Complaint. The First Amended Complaint is subject to review pursuant to 28 U.S.C. § 1915A.

Johnson is further **ADVISED** that his obligation to pay the filing fee for this action was incurred at the time the action was filed, thus the filing fee remains due and payable, regardless of whether he elects to file a First Amended Complaint. *See* 28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).

Finally, Johnson is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **seven days** after a transfer or other change in address occurs. Failure to comply with this Order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

**DATED: December 7, 2022**

**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**