IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MAURICE S. JOHNSON,<br><br>      Plaintiff,<br><br>v.<br><br>DEE DEE BROOKHART, JENNINGS, PUCKETT, OCHS, GIVINGS, ANTHONY WILLS, SHERRY BENTON, and RYAN A. KILDUFF,<br><br>      Defendants. | Case No. 22-cv-860-NJR |

# **MEMORANDUM AND ORDER**

**ROSENSTENGEL, Chief Judge:**

      Plaintiff Maurice S. Johnson, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Hill Correctional Center, brings this action pursuant to 42 U.S.C. § 1983 for deprivations of his constitutional rights while at Lawrence and Menard Correctional Centers. His Complaint (Doc. 1) and First Amended Complaint (Doc. 19) were both dismissed for failure to state a claim. In his Second Amended Complaint (Doc. 24), Johnson again alleges violations of his constitutional rights while housed in unapproved protective custody at Lawrence and Menard. He alleges conditions of confinement, religious, and retaliation claims under the First and Eighth Amendments.

      This case is now before the Court for preliminary review of the Second Amended Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a).

1

Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

## The Second Amended Complaint

In his Second Amended Complaint, Johnson makes the following allegations: On December 21, 2021, Johnson transferred from Stateville Correctional Center to Lawrence Correctional Center (Doc. 24 p. 10). At Lawrence, Johnson requested to be placed in protective custody status. Lieutenant Puckett interviewed him in internal affairs, and Johnson was escorted to restrictive housing/segregation. He filed several grievances and personally complained to Jennings, Puckett, Ochs, and Givings about his conditions in segregation. Specifically, he complained about being subject to handcuffs, waist chains, and leg irons when being removed from his cell (*Id*. at p. 10). His cell also lacked hot water and heat, and he was not allowed recreation time or visitation (*Id*.). In segregation, he also lacked educational programs, access to Jewish religious services, and access to the dining area (*Id*. at p. 11). He also informed Jennings, Puckett, Ochs, and Givings that he had to prepare his meals in cold water due to the lack of hot water in the cell and that he was not receiving cleaning materials to clean his cell (*Id*. at p. 11). He also complained of the general conditions in his wing, including no locks on shower doors, cords sticking out of the walls, rusty furniture, no stools or chairs in the cell, and filthy conditions with mold and spiders (*Id*.). He wrote letters to Dee Dee Brookhart about the conditions in segregation. On January 18, 2022, Johnson spoke to Sherry Benton by telephone and informed her of the conditions in segregation (*Id*. at p. 12). Benton informed him that he

would have to file a grievance about the conditions, but that she would render a decision on his placement in protective custody (*Id.*).

Johnson is Jewish and practices several tenants of Judaism, including keeping kosher, attending Jewish services, participating in Passover, and meeting with a Rabbi. Johnson alleges that Dee Dee Brookhart, Anthony Wills, Jennings, Lieutenant Puckett, Lieutenant Ochs, Lieutenant Givings, Sherry Benton, and Ryan A. Kilduff failed to act on Johnson's letters, grievances, and requests to participate in Passover, Jewish services, and to meet with a Rabbi (Doc. 24, p. 9).

On January 19, 2022, John Doe Officer from internal affairs interviewed Johnson. He informed Johnson that if he signed out of unapproved protective custody, officials at the prison would send him to the medium security unit at Lawrence (*Id.* at p. 12). Johnson refused. On January 26, 2022, Johnson transferred to Menard Correctional Center (*Id.* at p. 13). Johnson believes he was transferred under the guise of a protective custody transfer and placed in unapproved protective custody at Menard. Johnson alleges that, at the time of the transfer, Sherry Benton had not yet rendered her decision regarding Johnson's placement in protective custody (*Id.* at p. 13). During his stay in unapproved protective custody at Menard, Johnson wrote letters to Anthony Wills, H. Price (a counselor at Menard), and various other officials about his denial of access to the law library, religious services, educational programs, and visitation (*Id.*). He was informed by Jane Doe librarian that he was currently in protective custody "intake" and, once placed in actual protective custody, he would be able to attend the law library. Counselor Price responded to a grievance stating that the "schedule was full" (*Id.*). Johnson submitted a

grievance to Ryan A. Kilduff regarding his conditions and various issues with protective custody (*Id*. at p. 14). He remained in unapproved protective custody at both Lawrence and Menard from December 21, 2021, until March 14, 2022.

## Discussion

Based on the allegations in the Second Amended Complaint, the Court finds it convenient to divide the *pro se* action into the following counts:

> **Count 1:** Eighth Amendment deliberate indifference claim against Dee Dee Brookhart, Anthony Wills, Jennings, Puckett, Ochs, Givings, Sherry Benton, and Ryan A. Kilduff for failing to remedy the conditions that Johnson faced while housed at both Lawrence and Menard Correctional Centers.
>
> **Count 2:** First Amendment claim against Dee Dee Brookhart, Anthony Wills, Jennings, Puckett, Ochs, Givings, Sherry Benton, and Ryan A. Kilduff for substantially burdening the practice of his Jewish faith.
>
> **Count 3:** First Amendment retaliation claim against Dee Dee Brookhart, Anthony Wills, Jennings, Puckett, Ochs, Givings, Sherry Benton, and Ryan A. Kilduff for conspiring to transfer Johnson to Menard in retaliation for Johnson requesting protective custody status.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Second Amended Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[1]

---

[1] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face"). To the extent Johnson refers to John and Jane Does throughout his

4

*Count 1*

As to Count 1, regarding the conditions Johnson faced while at Lawrence, Johnson adequately states a claim against Jennings, Puckett, Ochs, and Givings regarding his conditions in restrictive housing. Johnson alleges he personally spoke to them about being subjected to restraints when removed from his cell, the conditions of the cell itself, and the lack of access to facilities and amenities such as recreation, the law library, and visitation (Doc. 24, p. 10). He also personally spoke to them about access to cleaning materials and the physical condition of the cellhouse (*Id*. at p. 11). Johnson also alleges that he spoke to Sherry Benton by phone and informed her of all of the conditions that he faced. She told him to file a grievance. Based on these allegations, the Court finds that Johnson adequately states a claim against these individuals.

But there are no allegations to suggest that Brookhart was aware of his conditions while at Lawrence. Johnson alleges that he wrote letters, but there are no allegations to suggest that Brookhart received those letters or was personally aware of the conditions Johnson faced at the prison or acted with deliberate indifference to his conditions (*Id*. at p. 11). Further, there are no allegations to suggest that Ryan Kilduff acted with deliberate indifference to Johnson's conditions. Johnson alleges that he wrote grievances about his conditions that were reviewed by Ryan A. Kilduff, but the simple denial or mishandling of a grievance does not state a claim. *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011)

---

statement of claim who are not identified in the case caption as defendants, those individuals are **DISMISSED without prejudice**.

("[T]he alleged mishandling of [a prisoner's] grievance by persons who otherwise did not cause or participate in the underlying conduct states no claim."); *George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007). Johnson fails to indicate what Kilduff's response to any of the grievances were, only stating that he remained in unapproved protective custody status at Lawrence and Menard and his protective custody was ultimately denied. Without something more, the allegations against Kilduff for responding to grievances is not enough to state a claim.

Further, there are no allegations to suggest that any of the defendants were aware of conditions Johnson faced while at Menard. He alleges that he wrote grievances and letters, but there are no allegations to suggest that any of the defendants reviewed his letters, were aware of his conditions, or acted with deliberate indifference in responding to his concerns. Thus, any allegations regarding his conditions at Menard are also **DISMISSED without prejudice**.

For the reasons stated, Count 1 shall proceed only against Jennings, Puckett, Ochs, Givings, and Sherry Benton for the conditions that Johnson faced while at Lawrence.

*Count 2*

Johnson fails to state a claim in Count 2 regarding his practice of Judaism. "A prisoner is entitled to practice his religion insofar as doing so does not unduly burden the administration of the prison." *Hunafa v. Murphy*, 907 F.2d 46, 47 (7th Cir. 1990). In order to state a claim under the First Amendment, a plaintiff must set forth facts demonstrating that his "right to practice [his chosen religion] was burdened in a significant way." *Kaufman v. McCaughtry*, 419 F.3d 678, 683 (7th Cir. 2005). Johnson alleges that he was

6

unable to participate in the tenants of his Jewish faith in person or by closed circuit. But he fails to offer any facts that state a claim, instead relying on conclusory statements that the defendants failed "to act on the knowledge" of letters, grievances, and requests. He fails to provide any factual allegations to suggest when he requested access to services, to whom he placed his requests, and when those requests were denied. He merely states that Jewish services were not offered in unapproved protective custody but Johnson fails to allege that the individual defendants burdened his practice of religion. Thus, Count 2 is **DISMISSED without prejudice**.

*Count 3*

Johnson also seeks to raise a First Amendment retaliation claim in Count 3 against all of the named defendants. He alleges that all of the defendants conspired with each other to subject Johnson to unconstitutional conditions of confinement and deny him access to Jewish services (Doc. 24, pp. 15-16). Johnson alleges that he believes that he was subjected to these conditions because he requested protective custody status and complained about the conditions in letters and grievances (*Id.* at p. 15). He alleges that Brookhart and Wills, as individuals responsible for the respective prisons, conspired with Ochs, Puckett, and Givings to subject Johnson to unconstitutional conditions of confinement, deny him access to religious services, and transfer him to Menard (*Id.* at p. 15). He alleges that Sherry Benton and Kilduff kept the denial of his protective custody placement under seal in order to conspire to transfer him to Menard, a disciplinary facility, even though his transfer was for protective custody purposes (*Id.* at p. 16).

In order to state a claim for retaliation under the First Amendment, the plaintiff must demonstrate that (1) he engaged in constitutionally protected speech, (2) he suffered a deprivation likely to deter protected speech; and (3) his protected speech was a motivating factor in the defendants' actions. *Antoine v. Ramos*, 497 F. App'x 631, 634 (7th Cir. 2012).

A civil conspiracy claim requires the plaintiff to identify the parties involved in the conspiracy, the general purpose, and the approximate date. *Walker v. Thompson*, 288 F.3d 1005, 1007-08 (7th Cir. 2002). Conspiracy is not an independent basis of liability in Section 1983 actions. *See Smith v. Gomez,* 550 F.3d 613, 617 (7th Cir.2008); *Cefalu v. Vill. of Elk Grove,* 211 F.3d 416, 423 (7th Cir.2000). Although a plaintiff can allege that individuals conspired to violate his constitutional rights, allegations of a conspiracy have routinely been held to a higher pleading standard than other allegations. *Geinosky v. City of Chicago*, 675 F.3d 743, 749 (7th Cir. 2012). The complaint must allege a "plausible account of a conspiracy." *Id.* Bare conclusions are not enough. Likewise, allegations suggesting that there is only a suspicion of a conspiracy do not suffice.

Here, Johnson fails to properly allege a conspiracy to retaliate. He only alleges that Defendants Brookhart and Wills were over the operations of their respective prisons and their employees, but officials cannot be liable for the actions of their employees under a theory of *respondeat superior* because supervisor liability does not exist under Section 1983. *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001). Further, Sherry Benton and Ryan Kilduff cannot be liable for simply denying grievances. Nor are there any allegations to suggest a conspiracy to retaliate. Johnson also fails to allege that any of the individual's

8

actions were motivated by his grievances and/or his request for protective custody. He only states in conclusory fashion that the defendants retaliated because of his requests and grievances. Thus, he also fails to state a claim in Count 3.

## Disposition

For the reasons stated above, Count 1 shall proceed against Jennings, Puckett, Ochs, Givings, and Sherry Benton for the conditions Johnson experienced while at Lawrence Correctional Center. Counts 2 and 3, and all other claims and defendants, are **DISMISSED without prejudice.**

The Clerk of Court shall prepare for Defendants Jennings, Puckett, Ochs, Givings, and Sherry Benton: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Second Amended Complaint, and this Memorandum and Order to the defendants' place of employment as identified by Johnson. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Johnson, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the

address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Second Amended Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g). **Pursuant to Administrative Order No. 244, the defendants need only respond to the issues stated in this Merit Review Order**.

If judgment is rendered against Johnson, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Johnson is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **seven days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

DATED:  August 22, 2023

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**

## Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your Amended Complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Amended Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**